argued United States v. Franco. One of your honors, I'm Robert Rosenthal. I represent the appellant, Mr. Franco. The sex offender conditions that were imposed in this case were not reasonably related to the sentencing factors of Section 3553A, in part because they were not based on the facts of the case, and the district court didn't provide an explanation for imposing those factors. In fact, the PSR only recommended sex offender conditions because, quote, Franco had a prior sex offense, which is at page 30 of the PSR. And that's not the case. He didn't have a prior sex offense. And I don't think you're making an argument that there is a material distinction in the wording of those three conditions. Am I right? Correct. So, and I know there are slight variations, but I think you're going to call those conditions. And as I understand it, there was no contemporaneous objection in 2010 or 2012 to the imposition of these conditions. Is that correct? Yes. Now, most recently, as I understand it, under Dr. Chief, you have complained to Judge Saldana that she has denied your request to call for those conditions. Is that correct? That's correct. Now— And that was an ineffective assistance of counsel argument in that court, yeah. But substance of the Chief never— Yes. Yes. Yes. Yes. Mr. Franco is arguing ineffective assistance of those counsel in both of those cases. One is pending in this Court. That appeal is in abeyance until this is decided. But as far as those photographs, questionable ages is the best, most damning description of those photographs. The photographs shown to Judge Seibel or to Judge Preskin? I believe certainly in 2009, but questionable ages. Judge Seibel did see them in 2009? I believe, yes. He wasn't sure. I'm not entirely— I mean, I apologize. No, I'm sorry. Answer to Judge Chin. I'm not entirely sure. I believe that's the case. But there were—she didn't make any findings? She didn't say these are child pornography? No. And— She's charged with child pornography. No. And in fact, they use evidence that they found in that inspection to prosecute him, right, for the identity theft for those cases. But they didn't use these—I mean, it's one more count in an indictment. They didn't use it for a violation of his terms and conditions of probation? I'm sorry, I didn't— Were the terms and conditions—did they make any allegation that the photos themselves violated his terms and conditions of probation? I'm not certain if that was—they were—no, they were not used as conditions of the violation. They were not. And— I mean, that's the problem here. The characterization of these photographs keeps coming up as if it's some kind of established fact that he has some kind of sexual orientation towards children. I realize he has something in 1980. He's 23 years old then. Exactly. He's never been charged with sex crime since then. New York doesn't require him to register, does it? No, it does not. New York examined him and found—and examined the case and found he did not have to register. And it's important, the assumptions we're making about these photographs, questionably age—questionable ages. In the appeal, the government takes the position that they are apparent minors. So we are doing everything except saying that this was child pornography. What's the date of the possession of those photographs? It was 2009 when that inspection was done. Yeah. And now there was an evaluation done in which one assessment tool for attraction to minors was used, and that doctor—that was Dr. Must—found that there was some likelihood of that. But there were other exams. There were evaluations in 1981 and 2009 that did not find that, and neither did Dr. Bardley, who performed a more exhaustive evaluation just two years ago. I mean, in the 2007 document, you have that. I think the Nation Department sent photographs of two different types of misdiagnosis that he sent to court, paragraphs 124 and 26. Is that right? Yeah, I—the paragraphs, I don't— Right. But there's one determination based on one analysis that there's some likelihood of that attraction. I think this does come to the photographs. I think that's the juicy piece of this. And if they were minors, there would have been a prosecution. Well, your starting point, though, is that we don't really know what Judge Fresco is thinking. And that is true. Can you tell us anything about why she imposed it? And that is true, and this is not an obvious case. The law is quite clear that it has to have a connection to an assessment with regard to the potential risk he poses to the community. Correct. And the record is really silent. The judge expressly adopted the calculations of the pre-sentence report, but not the entire pre-sentence report. She did not accept that, and the record is silent otherwise. So you are— That's okay. You can go. It's all right. Go ahead. Go back. There's a challenging opinion here on the appeal. One of them is with respect to the searches of the accused. Given the position of your client with respect to these accused, the filing of that case, why are you challenging the inspections of the accused? Yeah, I would—my argument would be—and I didn't write the brief, but my argument would be it was—I'm substituting. Shot further. Yeah. But my argument would be that the provisions may be the same, but that it's a sex offender provision. We can do it under another provision, the same protection. But there is a stigma to these as well. So, yes, the computer is not the key problem here. And the second issue that you're challenging is for a certain kind of mental health treatment. If your client is involved in this treatment, do you want to deal with the treatment as well, or do you do it separately? Mental health treatment different than sex offender or sexual abuse treatment. Many of those programs require you to claim that you have this problem, which has its own drawbacks. So it's not just you need to go to counseling, generic counseling, or counseling for the antisocial disorder. Thank you. We'll hear from the government. May it please the Court. My name is Shalan Kamal. I'm an assistant United States attorney here in the Southern District of New York. I represent the government in this appeal, and I represented the United States before the district court as well. Judge Preska did not abuse her discretion in imposing the challenge conditions, and that's because the record before Judge Preska was more than merely the prior conviction from 1981. It included the photographs that the panel has focused on so far, but it also included statements made by the defendant. We don't know what she was thinking. If she had said that, it would be a different matter, but she didn't tell us why. Well, Judge Preska actually, defense, appellant's counsel is correct that she expressly adopted the calculations in the PSR. She also did ask the parties if there were any other challenges to the PSR, presumably because the court was relying on them, and defense counsel at the time responded, no, not other than those set forth in our submission. Well, you know, we just had a case yesterday that said that, or the other day, that talked about the fact that there was child erotica on somebody's computer, which I hadn't really searched out the definition of which, but the government was asserting was legal, not, you know, not violent of the child pornography laws. And how are we supposed to know that these pictures aren't child erotica as opposed to child pornography? Never charged, never listed as child pornography, nobody's ever made a filing deeming that he was in possession of child pornography. These pictures could be perfectly legal for him to possess, and yet somehow it becomes determinative, the fact that he's a sex offender? Well, Your Honor. As to whether I think that's, whether I would look at that or whether I would find that socially worthy in any way, shape, or form, it's a different matter. That's not what we're about here, is it? I understand your concern, Judge Wesley. Right. But Judge Seibel did make a finding. I mean, it was an implicit finding, and it's listed in the judgment of revocation from that 2009 revocation proceeding. Implicit finding? The implicit finding was that these photographs, that these photographs constituted child pornography. And, in fact, at the end of the laundry list of the special conditions, yes, Your Honor, and I can give you, I can. Give me a reference for that, would you? Certainly. Is it the government's position that they were child pornography? It's the government's position that, yes, the record reflects that the record before Judge Presco was that these photographs were child pornography. And just if I may, Judge Wesley, since you asked for it, at the very end, this would be the 2009 docket, so 2009 CRIM 849, docket entry number 9. The name of the document is the judgment of revocation. It's that part of the appendix that you provided us here? It is not. It is not, Your Honor. If you're going to talk to me about it, you're going to have to send it to me. We'll certainly do so, Your Honor. I'm not trying to be punitive. Understood. It's just you're facile with that stuff, and my clerks are to some degree too, but I'd much rather that all three of us had the same document. And my two colleagues are former district court judges, so they're much better at this stuff than I am. So I'd much prefer that you send it to us. I'm happy to do so, Your Honor. I can also read for you verbatim the language that Judge Press, that Judge Seibel put in those conditions, which was, should the analysis of the images that have been seized turn out not to include child images, Judge Seibel would entertain an application to modify those conditions designed to protect against that sort of behavior. And as the panel elicited from appellant counsel, there was no subsequent challenge and there was no subsequent attempt to modify. It's also an effective assistance claim. So we don't know. There was no finding. So you're inferring from that, from the failure to challenge it, that it must have been child pornography? Well, inferring from that, but also, Judge Chin, inferring from the fact that the nature of the photographs was not challenged in the sentencing submission that was before Judge Preska either. The description, as I understand it, was questionable age. And so I don't know what that means. That means it was close. And I take the Court's point that, you know, with adolescents, it can be hard to tell exactly. But, you know, that ultimately goes to the heart, as I'm sure many on the bench are aware, that goes to the heart of prosecutions for this type of matter. But it's not just the photographs that were part of the record that was before Judge Preska. It was also statements made by Mr. Franco in 2009. And those were particularly troubling, particularly when it comes to the safety of the community. So understandably, this 1981 conviction was a long time ago. But at the same time that he is found in possession of these images, he also, when he is speaking to the court-ordered psychiatrist, states that this relationship he had, the sexual relationship with a 15-year-old, was healthy, natural, and appropriate, and he would, quote, do it again under the right circumstances. Now, that is of concern, particularly given the nature of the photographs and the prior conviction and, truthfully, the defendant's lifelong failure. The prior conviction wasn't for kidnapping. It wasn't for having sex with the 16-year-old. In fact, the description of it in the PSR doesn't – I mean, it's definitely a kidnapping, but it doesn't – and I'm not – I don't want to sound like this guy's defender, but it doesn't talk about a sexual act. He was trying to convince him to write to his parents that he was running away so they could run away together. If I may correct, Your Honor, briefly, the – If you disagree with me, and by doing that, correcting me, go ahead. Then I respectfully disagree. The 1981 conviction was for unlawful imprisonment and conduct injurious to a minor under the age of 15. So that – so it is not a 16-year-old. That's sort of the first point. The second point is that the sexual nature of the relationship was admitted by Franco subsequently in his sentencing submissions – in his sentencing submission before Judge Preska. I agree with you about that. I agree with you about that. So I take the Court's point that the convict – the offense of conviction is not a, quote-unquote, sex offense, and therefore – and when I say, quote-unquote, I simply mean that New York State hasn't determined that it's a sex offense under its laws that requires registration and notification. But as part of the characteristics of the defendant, which are also a basis for Judge Preska to impose those conditions, they are before the Court, and they are troubling. Let me ask you this. Yes. Is the rule that comes out of this, once a sex offender, always a sex offender, 37 years is not enough? That is not the case, Your Honor. The rule that would – Let's say that the photographs weren't in this case. Were not, Your Honor? Were not. Would the fact that he had a conviction in 1981 be enough to impose a condition without – and not be an abuse of discretion to impose a condition that he be treated as a sex offender? Is that – just tell me what the government's view is, what you'd ask for. If I have – may I have one moment? Your Honor, the government's position would be that each defendant at sentencing is unique, and the facts of their prior histories and offenses is – requires individualized treatment. I think – I think the Court – Don't tell me what the government thinks now. Tell me what you think. Tell me – are you saying to me that conduct 37 years ago is – that's not repeated in 37 years is indicative of conduct tomorrow? Your Honor, I think the case – Does that make any sense to you? Your Honor, the case law addresses your concern, and it speaks of intervening circumstances. That is what is brought up in the Zielinski case, as well as other cases outside the circuit that have made the individualized determination that the panel will make and that the district court already made about whether or not these conditions are appropriate. Without more, a 31-year-old conviction, Your Honor, is a much tougher case to make. And so – and this case is different because? Because – because – I don't want to – I'm not trying to be unfair to you. Go ahead. This case is different, Your Honor, because of the intervening circumstances. And those are? Those are the photographs. Those are the statements. And those statements endorse that prior 1981 conviction and the propriety of that admittedly sexual relationship with a 15-year-old, and the – the profession that he would do it again, on that record, all of which is in the PSR, which was before Judge Preska, and Judge Preska was well aware of. And I understand she did not – she did not walk through or cite every single paragraph of the PSR upon which she relied, but she clearly had it before her. She made a record of the fact that it was under consideration by her. And when she imposed sentence, she made clear, and I believe that's at the appendix at 40 – 42, that she notes that the most troubling factor in imposing sentence is the defendant's history, and that history spans dozens and dozens of paragraphs of that PSR, including his statements, and including the photographs, and including the 1981 conviction. Well, he certainly seems – his background certainly seems to reflect not an appreciation for private property, but having said that, okay. I appreciate it. You've argued very well. Thank you. If the – unless the panel has any other questions, I would rest on the brief and request that the sentence be confirmed. Thank you. Thank you. We'll hear the rebuttal. Thirty-eight years is a long time that he – the statements that are provided. I mean, she makes a good point. He hasn't – he doesn't seem to have any sense that it was in an appropriate conduct back then. Well, that his – first, those statements, we don't have the entire – I could ask five questions to follow up on those statements. You don't regret what, exactly, do you not regret? You would do it again. That's what Judge Preska knew. Right. But you would – he would do it again if he was 23 years old again at 62, looking back at 23, or he would do it. I get that, but what's a judge to do? The judge – those extra questions weren't asked. Right. She's got a PSR in front of her that talks about this fellow. He has a long history of antisocial behavior. Right. And who at one point in time abducted a younger person because of an affection for that person and then later has these photographs. I mean, that's troubling to me because we really don't know what the nature of these photographs are. But is that – is this really off the range of reasonableness in your view? I think this is off the range of reasonableness, that a 62-year-old man says this thing I did when I was 22. As bad as it may have been when I was – or 23, as bad as that may be. Even if he says if I was 23 I would do it again, that's not I'm 62 now and I'll do it tomorrow. I don't think that's what he was saying at all. He was out for a year during his escape. Right. And there's no criminal activity during that period of time. There's one year of the – that's one year in this going forward of three years. There's one that we see that he didn't do anything or harm anyone. His history is – that we know of. His history is – he has a history of being a recidivist. But at first you have to have done a crime to be a recidivist. But he's repeating the larceny kind of crimes, the other crimes, not crimes having to do with sex. And the photographs, you know, rest on the earlier argument, if they had been pornography he would have been prosecuted for pornography. There's just no – there's no excuse for that. And that's all I have. Thank you. Thank you. Very much. Nicely argued, both of you. The remaining two cases are on submission. Accordingly, I'll ask the clerk to adjourn. Okay, adjourned.